UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| EDWIN N. HOLMES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:23-cv-01304-TWP-MG |
| MARION COUNTY SHERIFF OFFICE, | ) ) ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR COUNSEL**

This matter is before the Court on Defendant Marion County Sheriff Office's ("MCSO") Motion for Summary Judgment (Dkt. 38). Also pending is *pro se* Plaintiff Edwin Holmes' ("Holmes") Motion for Assistance with Recruiting Counsel (Dkt. 36). Holmes filed this action alleging that MCSO violated his constitutional rights by failing to provide him with adequate conditions of confinement, failing to protect him from other inmates, and failing to provide necessary medical care. For the reasons below, Holmes' request for assistance with recruiting counsel is **denied**, and MCSO's summary judgment motion is **granted**.

**I.   STANDARD OF REVIEW**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A

court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.  FACTUAL BACKGROUND

Because MCSO moves for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to Holmes and draws all reasonable inferences in his favor. *Khungar*, 985 F.3d at 572–73. Although Holmes responded to MCSO's Motion for Summary Judgment, he did not respond to their arguments or designate any evidence in the record that would create a dispute of material fact (*See* Dkt. 43).[1] Accordingly, the facts alleged in the Motion are "admitted without controversy" so long as support for them exists in the record. S.D. Ind. L.R. 56-1(f); *see* S.D. Ind. L.R. 56-1(b) (party opposing judgment must file response brief and

---

[1] In his response, Mr. Holmes argues that MCSO failed to provide necessary discovery (Dkt. 43 at 1). He also states that he "requested the Court several times to assist and or intervene in assisting in Ordering Defendant to supply the necessary information." *Id*. Mr. Holmes is mistaken. On only one occasion did he file a motion to compel in this case (*See* Dkt. 30). As the Court noted in its denial of that request, "[t]he portions of the motion referring to the Court ordering Defendant to respond to discovery requests refer to a different case Plaintiff is pursuing in this Court . . . There is no basis to compel Defendant to respond to those discovery requests in this case." (Dkt. 37). Despite the Court's guidance, Mr. Holmes did not avail himself of the opportunity to compel any appropriate discovery MCSO might have been improperly withholding.

identify disputed facts). "Even where a non-movant fails to respond to a motion for summary judgment, the movant still has to show that summary judgment is proper given the undisputed facts." *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021) (cleaned up).

A.      **The events of March 14–21, 2022**

Holmes was in the pretrial custody of the MCSO at the Marion County Adult Detention Center ("ADC") for approximately one week in 2022 (*See* Dkt. 1). On Monday, March 14, 2022, Holmes was arrested and booked into the ADC at approximately 10:15 a.m. and provided an inmate identification bracelet (Dkt. 38-1 at 20:22–21:9). Medical staff saw Holmes upon his arrival. *Id*. at 20:22–21:1. He was also provided a mattress, blanket, toothbrush and regularly scheduled meals. *Id*. at 32:16–33:13.

On Friday, March 18, 2022, Holmes posted three cash bonds and was processed out of the Marion County Jail system and transported by MCSO to the Marion County Community Corrections facility to check-in with probation (Dkt. 1 at 1–2). Holmes arrived at 7:57 p.m., but the Community Corrections office had closed ten minutes before its regular 8:00 p.m. closing time. *Id*. at 2. Because the office was already closed, Holmes was returned to the ADC where he arrived at approximately 9:00 p.m. (Dkt. 38-2 at 2).

On Saturday, March 19, 2022, a sheriff deputy told Holmes that there were no available drivers to transport him to Community Corrections Office that day, and the office was closed on Sunday (Dkt. 38-1 at 58:9–-59:1). As a result, Holmes was informed that he would have to spend the weekend at the ADC. Holmes was re-booked into ADC Friday night, but this time, he did not receive an inmate identification bracelet. *Id*. at 26:13–19. Due to this, Holmes did not receive a mattress, blanket, toothbrush or regularly scheduled meals, although he did receive some food on March 20 from an unknown MCSO deputy. *Id*. at 26:18–29:13, 31:13–32:5. Holmes does not

3

know of any other inmate who had the same issue of not receiving an identification band, but he believes that if he had received one, he would have received everything he should have. *Id*. at 28:5–13.

In the early morning of March 19, 2022, while Holmes was sitting in a chair facing the television, an inmate came up behind Holmes and hit him in the head. *Id*. at 35:21–37:13. Holmes did not have any warning and therefore did not warn any MCSO staff about a risk of assault from the inmate. *Id*. at 37:22–25, 51:21–24. Following the assault, Holmes told a deputy he was in fear for his life, and the deputy removed Holmes from that housing unit and placed him in a one-person cell. *Id*. at 38:17–41:6. Holmes felt safer after the move and was not assaulted again during his one week stay at the ADC. *Id* at 51:16–20. Holmes believes that because of inadequate staffing, the cameras in the ADC were not properly managed which resulted in him being assaulted (Dkt. 38-1 at 48:17–49:2).

Deputy Chief of the Jail Division Michael Turner ("Turner") testified that at the time of the attack, the ADC staffing exceeded the minimum staffing level for the facility provided by policy and included 24 employees working the ADC housing floors, six of whom were control staff monitoring the cameras on those floors (Dkt. 38-2 at 2). Turner further testified that the level of staffing "ensured all essential posts and positions were filled with qualified personnel." *Id*.

Holmes was released from the ADC at approximately 10:00 a.m. on March 21, 2022, and transported to Marion County Corrections for probation. *Id*. at 41:22–42:6.

**B.     MCSO Policies**

During all relevant times, the following policies were in effect:

MCSO Jail Policy JP4-18: Inmate Meals stated that all inmates receive three meals, of which two shall be hot, every day (Dkt. 38-2 at 2–3, 20).

4

> MCSO Jail Policy JP4-4: Inmate Clothing, Linen Issue, and Exchange, Personal Hygiene provided that all inmates receive clean bedding, a mattress, and materials necessary for maintaining proper hygiene, including a toothbrush. *Id*. at 3, 23–26.
>
> MCSO Jail Policy JP2-16: Facility Staffing provides MCSO staffing guidance. *Id*. at 2.
>
> MCSO Jail Policy JP3-1: Inmates Rules and Discipline defines battery against another inmate as a major offense subject to discipline and referral for criminal prosecution. *Id*. at 3, 28–32.
>
> MCSO Jail Policy JP6-8: Protection from Abuse states that an inmate may request segregation for protection from other inmates for a reportedly life-threatening situation. *Id*. at 3, 34–36.
>
> MCSO Jail Policy JP-23: Clock Rounds requires a system of rounds by MCSO staff for safety reasons and requires rounds at least every 60 minutes for general population units. *Id*. at 3, 71–75.
>
> MCSO Jail Policy JP4-42: Medical Services provides that the MCSO should provide medical services that ensure inmate health care needs are met in a timely and efficient manner. *Id*. at 4, 77–79.

The MCSO contracted with a food service provider, Aramark Correctional Services, LLC, to ensure the food policy was implemented. *Id*. at 2–3. Inmates are informed of MCSO policies upon arrival at ADC, and every inmate has access to the MCSO Inmate Handbook. *Id*. at 3.

**C.    MCSO's Contract with Wellpath, LLC**

After the assault, Holmes requested medical care four different times and was ignored by MCSO staff each time (Dkt. 1 at 2). Holmes does not recall exactly what he said when requesting medical care, but recalls that he "said something to someone, and they said, we'll get somebody… or we'll check on that or something." (Dkt. 38-1 at 52:15–17). After he was released to probation, Holmes was able to see a physician who diagnosed him with a concussion. *Id*. at 67:16–21.

During all relevant times, MCSO contracted with Wellpath for medical care of all inmates at the ADC (Dkt. 38-2 at 3–4). By the terms of the contract, Wellpath provides comprehensive health care, including emergency care 24 hours a day for ADC inmates. *Id*. Wellpath services are

5

required to meet constitutional and community standards, the standards of the National Commission on Correctional Health Care, the American Correctional Association, and all State of Indiana and federal laws applicable to health care services in jail facilities. *Id*. at 4. Under the contract, Wellpath was responsible for responding to inmate medical requests. *Id*.

**D.     Procedural Background**

Holmes filed this action on July 26, 2023 (Dkt. 1). After screening the Complaint and dismissing certain defendants, the Court determined that Holmes' claims against MCSO remained (Dkt. 22). On December 16, 2024, Holmes requested assistance with recruiting counsel (Dkt. 36). The Court will first address Holmes' Motion for Assistance with Recruiting Counsel before addressing MCSO's Motion for Summary Judgment.

### III.     MOTION FOR ASSISTANCE WITH RECRUITING COUNSEL

Holmes filed his Motion for Assistance with Recruiting Counsel a week after the enlarged deadline for serving discovery requests. *Id*. Litigants in federal civil cases do not have a constitutional or statutory right to court-appointed counsel. *Walker v. Price*, 900 F.3d 933, 938 (7th Cir. 2018). Instead, 28 U.S.C. § 1915(e)(1) gives courts the authority to "request" counsel. *Mallard v. United States District Court*, 490 U.S. 296, 300 (1989). As a practical matter, there are not enough lawyers willing and qualified to accept a pro bono assignment in every *pro se* case. *See Olson v. Morgan*, 750 F.3d 708, 711 (7th Cir. 2014) ("Whether to recruit an attorney is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.").

"'When confronted with a request under § 1915(e)(1) for pro bono counsel, the district court is to make the following inquiries: (1) has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case,

does the plaintiff appear competent to litigate it himself?'" *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021) (quoting *Pruitt v. Mote*, 503 F.3d 647, 654–655 (7th Cir. 2007)). These two questions "must guide" the Court's determination whether to attempt to recruit counsel. *Id.* These questions require an individualized assessment of the plaintiff, the claims, and the stage of litigation. *See Pruitt*, 503 F.3d at 655–56.

The first question, whether litigants have made a reasonable attempt to secure private counsel on their own, "is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." *Eagan*, 987 F.3d at 682; *see also Thomas v. Anderson*, 912 F.3d 971, 978 (7th Cir. 2019) (because plaintiff did not show that he tried to obtain counsel on his own or that he was precluded from doing so, the judge's denial of these requests was not an abuse of discretion). Holmes states that he attempted to obtain representation from numerous attorneys, and the Court has no reason to doubt his assertion. Accordingly, the Court finds that he has made a reasonable effort to recruit counsel on his own before seeking the Court's assistance. *See Thomas*, 912 F.3d at 978.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims himself." *Eagan*, 987 F.3d at 682 (citing *Pruitt*, 503 F.3d at 655). "The court's competency evaluation should account for 'the plaintiff's literacy, communication skills, educational level, and litigation experience,' and, to the extent that such evidence is before the court, information 'bearing on the plaintiff's intellectual capacity and psychological history.'" *Watts*, 42 F.4th at 760 (quoting *Pruitt*, 503 F.3d at 655). "Specifically, courts should consider 'whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself.'" *Eagan, 987 F.3d at 682* (quoting *Pruitt*, 503 F.3d at 655). "This assessment

of the plaintiff's apparent competence extends beyond the trial stage of proceedings; it must include 'the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.'" *Id.* (quoting *Pruitt,* 503 F.3d at 655).

Holmes has not satisfied the second inquiry. Though Holmes' Motion states that he has suffered at least two concussions, he has not indicated how those past injuries affect him now. He states that he has difficulty reading and writing in English, but his Complaint and other documents filed in this case suggest otherwise. He completed high school and received additional education during his time in the Navy. Moreover, the facts supporting his claims are not particularly complex and are within his personal knowledge. Holmes also has experience litigating other cases in this Court.[2] Accordingly, the Court believes Holmes can proceed *pro se* through summary judgment and his Motion for Assistance in Recruiting Counsel is **denied**.

### IV.  SUMMARY JUDGMENT DISCUSSION

Holmes asserts that the MCSO had a policy, practice, or custom of failing to provide adequate medical care, failing to staff the ADC, denying inmates essential items such as food, bedding, a toothbrush, and soap, failing to protect inmates, and failing to supervise and monitor inmates. He also brings a state law claim of negligence against MCSO.

Holmes' constitutional claims proceed under the theory of liability outlined in *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978). "*Monell* liability is rare and difficult to establish." *Stockton v. Milwaukee County*, 44 F.4th 605, 617 (7th Cir. 2022). Liberally construed, Holmes

---

[2] *See* Holmes v. Marion County Sheriff, et. al, No: 1:23-cv-1307-TWP-MJD; Holmes v.. IMPD, et. al, 1:23-cv -01304-TWP-MG; Holmes v. Tompkins, 1:23-cv-01366-JRS-TAB; Holmes v. Marion County Sheriff et al, 1:23-cv-01305-JPH-MG; Holmes v. Delta Airlines, Inc., 1:20-cv-02262-RLY-MPB.

brings three *Monell* claims against the MCSO: (1) deliberate indifference to serious medical needs; (2) unconstitutional conditions of confinement; and (3) failure to protect inmates.[3]

To prevail on a claim against MCSO, Holmes must first show that he was deprived of a federal right, and then he must show that the deprivation was caused by a MCSO custom or policy or failure to implement a needed policy. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). As the Seventh Circuit has explained:

> There are at least three types of municipal action that may give rise to municipal liability under § 1983: (1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority. Inaction, too, can give rise to liability in some instances if it reflects a conscious decision not to take action.

*Id.* The MCSO cannot be held liable under the common-law theory of respondeat superior for its employees' actions. *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021). *Monell* liability only attaches if the municipality acted with deliberate indifference. *J.K.J. v. Polk Cnty.*, 960 F.3d 367, 377 (7th Cir. 2020); *Board of Cnty. Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 407 (1997); *see also Miranda v. Cnty. of Lake*, 900 F.3d 335, 352 (7th Cir. 2018) (applying deliberate indifference standard to pretrial detainee's *Monell* claim despite disavowing that standard for pretrial detainee's claims against individual defendants).

Holmes does not allege that the MCSO has explicit policies that caused the alleged constitutional violations (Dkt. 1). Instead, he is alleging a widespread practice that is so permanent and well-settled that it constitutes a custom or practice, under category two. A "pivotal requirement" for this type of claim is a showing of widespread constitutional violations. *Hildreth v. Butler*, 960 F.3d 420, 426 (7th Cir. 2020); *see also Stockton*, 44 F.4th at 617 ("To establish

---

[3] MCSO construes Mr. Holmes' Complaint to bring five claims, but the Court combines its analysis for "understaffing," "failure to supervise inmates," and "failure to protect" into one section below (*See* Dkt. 39 at 8).

deliberate indifference to the purportedly unconstitutional effects of a widespread practice, [the plaintiff] must point to other inmates injured by that practice."). While it is not "impossible" for a plaintiff to demonstrate a widespread practice or custom with evidence limited to personal experience, "it is necessarily more difficult . . . because what is needed is evidence that there is a true municipal policy at issue, not a random event." *Id*. (cleaned up) "If a municipality's action is not facially unconstitutional, the plaintiff 'must prove that it was obvious that the municipality's action would lead to constitutional violations and that the municipality consciously disregarded those consequences.'" *Dean*, 18 F.4th at 235 (quoting *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021)). "Where the policy relied upon is not itself unconstitutional, *considerably more proof than the single incident will be necessary in every case* to establish both the requisite fault on the part of the municipality, and the causal connection between the policy and the constitutional deprivation." *Id.* (cleaned up) (emphasis in original).

The Court will address Holmes' claims in turn, beginning with analysis of his failure to protect claims.

**A.**     **Failure to Protect Claim**

Prison officials have a duty to protect inmates from violent assaults by other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). They incur liability for the breach of that duty when they were "aware of a substantial risk of serious injury to [an inmate] but nevertheless failed to take appropriate steps to protect him from a known danger." *Guzman v. Sheahan*, 495 F.3d 852, 857 (7th Cir. 2007) (internal quotations marks and citation omitted); *see also Santiago v. Walls*, 599 F.3d 749, 758–59 (7th Cir. 2010). To succeed on a claim for failure to protect, Holmes must show that (1) MCSO was aware of a substantial risk of serious injury to him, and (2) they acted with deliberate indifference to that risk. *See Farmer*, 511 U.S. at 834, 837; *Dale v. Poston*, 548

10

F.3d 563, 569 (7th Cir. 2008). An official will only be liable when he disregards that risk by failing to take reasonable measures to abate it. *Borello v. Allison*, 446 F.3d 742, 747 (7th Cir. 2006). Further, damages are unavailable for fear of an unrealized attack. *Babcock v. White*, 102 F.3d 267, 270 (7th Cir. 1996).

Holmes testified that he did not know of any threat against him before he was attacked, that he did not tell any MCSO staff about any threat against him, and that he felt safer after he was reassigned to a different housing area away from his attacker. Holmes' contentions are not supported by record as he has designated no evidence to show that the MCSO had a practice or custom of understaffing the ADC or of otherwise failing to monitor inmate activity. Instead, the undisputed evidence in the record shows that the ADC was fully staffed during the time in question, the attack was unexpected, and following the attack, Holmes was transferred to a housing area where he felt safer. Although the attack against Holmes was unfortunate, there is no evidence in the record from which a reasonable jury could infer that it was caused by a MCSO practice or custom. Accordingly, MCSO is entitled to summary judgment on Holmes' failure to protect claim.

**B.    Deliberate Indifference to Serious Medical Needs Claim**

A pretrial detainee's unconstitutional medical care claim, brought under the Due Process Clause of the Fourteenth Amendment, is analyzed according to the objective unreasonableness inquiry laid out in *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). *Miranda*, 900 F.3d at 352. A defendant violates a pretrial detainee's due process right to constitutionally acceptable medical care if:

> (1) there was an objectively serious medical need; (2) the defendant committed a volitional act concerning the [plaintiff's] medical need; (3) that act was objectively unreasonable under the circumstances in terms of responding to the [plaintiff's] medical need; and (4) the defendant act[ed] "purposefully, knowingly, or perhaps even recklessly" with respect to the risk of harm.

11

*Gonzalez v. McHenry Cnty., Ill.*, 40 F.4th 824, 828 (7th Cir. 2022) (quoting *Miranda*, 900 F.3d at 353−54). "This standard requires courts to focus on the totality of facts and circumstances faced by the individual alleged to have provided inadequate medical care and to gauge objectively—without regard to any subjective belief held by the individual—whether the response was reasonable." *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (internal quotation marks and citation omitted).

The parties do not dispute that Holmes was assaulted resulting in a head injury which was objectively serious. Holmes, however, has adduced no evidence that the MCSO had a policy or practice of not providing necessary medical care. He does not point to other inmates who were denied medical care, nor does he point to any similar problems he encountered during his initial pretrial incarceration earlier that week. In contrast, MCSO has designated evidence which shows that its contract with Wellpath was consistent with MCSO Jail Policy JP4- 42: Medical Services, which states the MCSO should provide a continuum of medical services to ensure that the health care needs of inmates are met in a timely and efficient manner (Dkt. 38-2 at 4, 76).

Holmes testified that he requested medical care four different times, and each request was ignored by MCSO staff (Dkt. 38-1 at 52:5–53:24). However, he does not recall to whom he made the requests. *Id.* MCSO argues that Holmes cannot provide factual support that creates a question of fact about the medical care practices at the ADC (Dkt. 39 at 15). Rather, "the evidence shows MCSO implemented constitutionally-adequate policies at the ADC and took reasonable steps to ensure that inmates are provided with proper medical care." *Id*. The Court is persuaded.

Holmes has designated no evidence demonstrating an "unlawful practice that was so pervasive that acquiescence on the part of the policymakers apparent and amounted to a policy decision." *Bridges v. Dart*, 950 F.3d 476, 479 (7th Cir. 2020). The only evidence in the record

regarding Holmes medical care indicates that Holmes was evaluated by Wellpath medical personnel immediately upon entry into the ADC. A reasonable jury could not infer from these facts that the MCSO had a policy or practice of not providing necessary medical care. Accordingly, MCSO is entitled to summary judgment on Holmes' deliberate indifference to serious medical needs claim.

C.    **Conditions of Confinement Claim**

Conditions-of-confinement claims for pretrial detainees, which flow from the Due Process Clause of the Fourteenth Amendment, are analyzed under an objective standard. *Hardeman v. Curran*, 933 F.3d 816, 821−22 (7th Cir. 2019). Under this standard, the plaintiff must show "that the conditions in [the jail] posed an objectively serious threat to his health; that the [defendant's] response was objectively unreasonable under the circumstances; and that [the defendant] acted purposely, knowingly, or recklessly with respect to the consequences of [his] actions." *Mays v. Emanuele*, 853 F. App'x 25, 27 (7th Cir. 2021) (citing *Hardeman*, 933 F.3d at 823, 827 and *Miranda*, 900 F.3d at 353−54).

Holmes testified that over the weekend, he was deprived of necessities such as bedding, toothbrushes, and regular meals because he did not receive an inmate identification bracelet upon re-booking. He also testified that everyone else at the ADC received an identification bracelet. However, Holmes does not claim that he was denied an identification bracelet during his previous stay at the ADC or that he was deprived of any necessities at that time. A reasonable jury could not infer from the evidence in the record that the MCSO had a practice or custom of denying inmates identification bands or of denying inmates the necessities that Holmes failed to receive. At most, the facts support an inference of negligence on the part of the individual officers who re-booked Holmes into the ADC and of those officers who may have had an opportunity to correct

13

their mistakes but did not. Under a *Monell* theory of liability, however, the MCSO cannot be held responsible for the individual actions of its employees. *Howell*, 987 F.3d at 653. Accordingly, MCSO is entitled to summary judgment on Holmes' conditions of confinement claim.

**D.** **State Law Claim**

With Holmes' constitutional claims staged for dismissal, the Court has discretion in deciding whether to exercise supplemental jurisdiction over his remaining state-law claim. 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction[.]"). The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (internal quotation marks and citation omitted).

But exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994)) (internal quotation marks omitted). Here, the case has been pending for a lengthy time, discovery is closed, dispositive motions have been adjudicated, and it is clear how the pendent claim should be decided. Accordingly, the Court exercises supplemental jurisdiction over the remaining state law claim.

Holmes claims that MCSO was negligent in failing to adequately staff the jail and failing to monitor and supervise inmates (Dkt. 1 at 3). In his deposition, he testified that "since they had cameras in there" that "someone should have noticed, the incident" where he was hit sooner. (Dkt. 38-1 at 48:17–18). MCSO argues that Holmes cannot proceed with his negligence claim because he did not file a timely notice of tort claim causing his claim to be procedurally barred (Dkt. 39 at 12).

The Indiana Code provides that "a claim against a political subdivision is barred unless notice is filed with . . . the governing body of that political subdivision . . . within one hundred eighty (180) days after the loss occurs." I.C. 34-13-3-8. The date of loss occurs "when the plaintiff knew or, in the exercise of ordinary diligence, could have discovered that an injury had been sustained as a result of the tortious act of another." *Wehling v. Citizens Nat'l Bank*, 586 N.E.2d 840, 843 (Ind. 1992). Holmes now bears the burden of proving that he complied with the Indiana Code and filed a tort claim with MCSO. *See City of Indianapolis v. Satz*, 377 N.E.2d 623, 625 (Ind. 1978); *see also Myers v. Maxson*, 51 N.E.3d 1267, 1278 (Ind. Ct. App. 2016). Holmes has designated no evidence or argument to show that he filed a timely tort claim notice and MCSO has designated that such notice was never received (Dkt. 38-4). Accordingly, summary judgment in favor of MCSO is warranted on Holmes' state law claim.

In addition, even if timely notice had been filed, Holmes has designated no evidence to support his negligence claim. To establish a claim of negligence, a plaintiff must show that (1) the defendant owed the plaintiff a duty; (2) breach of the duty by allowing conduct to fall below the standard of care; and (3) the plaintiff suffered a compensable injury proximately caused by the defendant's breach of duty. *Caesars Riverboat Casino, LLC v. Kephart*, 934 N.E.2d 1120, 1123 (Ind. 2010).

As explained above, MCSO has a duty to protect inmates, such as Holmes, from violent assaults by other inmates. However, Holmes has not shown that MCSO's conduct fell below the standard of care; or that he suffered a compensable injury proximately caused by the MCSO's breach of duty. In his deposition, Holmes states a belief that because of inadequate staffing, the cameras in the ADC were not properly managed which resulted in him being assaulted (Dkt. 38-1 at 48:17–49:2). But Holmes also conceded that he does not know the staffing levels in the ADC in March 2022. *Id*. at 64:1–5. He further presents only conclusory statements regarding the cameras by arguing, "I think if they have cameras in a facility like that, they ought to have somebody monitoring them[.]" *Id*. at 63:13–15.

Conversely, MCSO designated evidence to show that it was fully staffed in 2022 as it had increased salaries and offered incentives to current employees, including retention and referral bonuses during the relevant time (Dkt. 38-3 at 2). The undisputed evidence is that at the time of the 2022 assault, the ADC staffing exceeded the minimum staffing level for the facility provided by policy and included 24 employees working the ADC housing floors, six of whom were control staff monitoring the cameras on those floors (Dkt. 38-2 at 2, 18). Holmes fails to show a breach of the duty owed to him by the MCSO as the record supports that the ADC was fully staffed in March 2022, and control staff was monitoring the cameras on all the housing floors. Therefore, Holmes' negligence claim also fails on the merits.

### V. CONCLUSION

For the reasons explained in this Order, Holmes' Motion for Assistance in Recruiting Counsel, Dkt. [36] is **DENIED** and MCSO's Motion for Summary Judgment, Dkt. [38] is **GRANTED**.

Final judgment shall issue by separate order.

**IT IS SO ORDERED**.

Date: 9/29/2025

Hon. Tanya Walton Pratt, Judge
United States District Court
Southern District of Indiana

Distribution:

EDWIN N. HOLMES
6311 Shelbyville Rd.
Indianapolis, IN 46237

Michael Brian Coppinger, II
brian.coppinger2@indy.gov

Barry F. McGinley
Frost Brown Todd LLP
bmcginley@fbtlaw.com

Anthony W. Overholt
Frost Brown Todd LLP
aoverholt@fbtlaw.com